UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| HAWRAA A.,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 25-cv-10763<br><br>Magistrate Judge Elizabeth A. Stafford |

**OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT
(ECF NOS. 12, 14)**

## I. Introduction and Background

Plaintiff Hawraa A. appeals the final decision of defendant Commissioner of Social Security (Commissioner), which denied her application for supplemental security income (SSI) under the Social Security Act. Both parties consented to the undersigned conducting all proceedings under 28 U.S.C. § 636(c) and move for summary judgment. ECF No. 8; ECF No. 12; ECF No. 14.

Plaintiff received child disability benefits, which were discontinued in May 2018 during a continuing disability review. ECF No. 7-1, PageID.586.

She applied for SSI in December 2020. *Id.*, PageID.592. In a November 2022 decision, an ALJ found plaintiff not disabled under the childhood disability standard. *Id.*, PageID.46-61. The Appeals Council denied review. *Id.*, PageID.29-31. Plaintiff appealed to this Court, and the parties stipulated to remand the case. *Id.*, PageID.727-732. Another ALJ held a hearing in January 2025, after plaintiff had turned 18 in April 2024. *Id.*, PageID.586. In the decision that followed, the ALJ found plaintiff not disabled under both the childhood and adult standards of disability. *Id.*, PageID.586-603. Plaintiff appeals that decision. ECF No. 1.

After review of the record, the Court **GRANTS** plaintiff's motion for summary judgment (ECF No. 12); **DENIES** the Commissioner's motion for summary judgment (ECF No. 14); and **REMANDS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

II.   Analysis

A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains

> sufficient evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation marks omitted). The substantial-evidence standard does not permit the Court to independently weigh the evidence. *Hatmaker v. Comm'r of Soc. Sec.*, 965 F. Supp. 2d 917, 930 (E.D. Tenn. 2013) ("The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion."); *see also Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) ("If the Secretary's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.").

**B.**

Plaintiff contends that the ALJ's "sparse" RFC analysis under the adult standard of disability is deficient. ECF No. 12, PageID.1493-1496. She maintains that the ALJ provided no explanation for discounting plaintiff's self-described limitations and instead determined the RFC based

3

on her interpretation of raw medical data. *Id.* The Court agrees that the ALJ failed to provide a logical bridge between the evidence and the RFC.

The ALJ found that plaintiff had the RFC to perform light work,[1] except:

> the claimant can occasionally climb ramps and stairs, but never ladders, ropes and scaffolds. The claimant can occasionally stoop, kneel, crouch, and crawl. The claimant can occasionally overhead reach. The claimant can have no exposure to unprotected heights or dangerous moving machinery. The claimant is limited to occasional interaction with coworkers, supervisors and the general public.

ECF No. 7-1, PageID.601. The ALJ noted that the record contains little medical evidence after plaintiff turned 18 in April 2024, as plaintiff lost her health insurance coverage. *Id.*, PageID.598, 601, 654. But the ALJ discussed plaintiff's hearing testimony and available medical evidence in other sections the decision.[2] *Id.*, PageID.596-600. The ALJ concluded that

---

[1] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds….[A] job is in this category when it requires a good deal of walking or standing…[and] when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls." 20 C.F.R. § 416.967(b); Social Security Ruling (SSR) 83-10, 1983 WL 31251 (1983).

[2] Although plaintiff is correct that the ALJ did not summarize her 2025 hearing testimony in the section of the decision applying the adult disability standard, the ALJ did summarize it when applying the childhood disability standard. *See* ECF No. 7-1, PageID.596-597; ECF No. 12, PageID.1494. A court must read an ALJ's RFC analysis in the context of the entire decision and may consider analysis in other sections when evaluating the

4

plaintiff's reported limitations conflicted with the record, reasoning that plaintiff reported doing well at a May 2024 medical visit and that her pain was treated conservatively. *Id.*, PageID.597, 601. Given the conservative treatment history, lack of objective findings, and plaintiff's activities of daily living, the ALJ assessed the above RFC. *Id.*

Because the ALJ "is charged with the responsibility" of determining the RFC, she need not base her RFC findings on a physician's opinion. *See Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018) (cleaned up). Still, an ALJ's decision must "provide an accurate and logical bridge between the evidence" and the RFC. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) (cleaned up); *see also Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the [RFC] finding, but the [ALJ] must make a connection between the evidence relied on and the conclusion reached."). That is, the "ALJ must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning" to permit meaningful review. *Cortes v. Comm'r of Soc. Sec.*, No. 18-13347,

---

RFC. *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 435 n.9 (6th Cir. 2014); *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).

5

2020 WL 2812761, at *10 (E.D. Mich. May 29, 2020) (cleaned up). An ALJ's failure to provide an adequate rationale warrants remand, even if substantial evidence supports the RFC. *Gross*, 247 F. Supp. 3d at 829.

The ALJ's RFC analysis offers no explanation tying the evidence to the functional limitations assessed. For example, the ALJ discussed a March 2020 record noting that plaintiff's shoulder and back pain limited activities like walking around in school or going to the mall. ECF No. 7-1, PageID.384-387, 597. She also discussed the March 2022 consultative examination with Marlene Mansour, M.D., who observed that plaintiff stood with her body tilted to the right; could not fully raise her arms above her shoulders, squat, or bend; and had good muscle strength and a normal gait. *Id.*, PageID.503-504, 597, 599. The Court cannot discern why the ALJ concluded from this evidence that plaintiff could perform light work or occasional stooping, kneeling, crouching, and crawling—postural maneuvers that involve squatting or bending, which Dr. Mansour stated that plaintiff could not do.

The ALJ's discussion of the state-agency consultants' opinions does not shore up the RFC. *See id.*, PageID.600. Those consultants evaluated only whether plaintiff met the childhood disability standard, meaning that they assessed whether plaintiff's limitations in six broad domains were "not

limited," "less than marked," "marked," or "extreme." *Id.*, PageID.128-129, 140-142; *see also* 20 C.F.R. § 416.926a(b)(1).  They did not apply the adult disability standard or determine plaintiff's RFC.  ECF No. 7-1, PageID.128-129, 140-142.

"Nor is this a case where the medical evidence shows relatively little physical impairment, such that the ALJ can make a commonsense judgment about [p]laintiff's functional capacity." *See Gross*, 247 F. Supp. 3d at 830; *see also McCaig ex rel. McCaig v. Comm'r of Soc. Sec.*, No. 16-11419, 2017 WL 4211047, at *9 (E.D. Mich. Aug. 25, 2017), *adopted*, 2017 WL 4176734 (E.D. Mich. Sept. 21, 2017).  At age seven, plaintiff was diagnosed with Ewing's sarcoma and began chemotherapy and radiation therapy.  ECF No. 7-1, PageID.384, 515.  She had a surgery removing four ribs and part of her right lung and reconstructing her right chest wall.  *Id.*  Although plaintiff's cancer was stable at the time of her hearing before the ALJ, she developed scoliosis and a significant kyphotic deformity that caused significant back pain and limitations in movement.  *See, e.g.*, *id.*, PageID.384, 397-400, 503-504, 511, 515, 526-529.  Plaintiff's trauma from this experience also resulted in severe depression and PTSD.  *See, e.g.*, *id.*, PageID.421-426, 1408-1412.  Further evaluation of how those conditions translate into concrete functional limitations is necessary.

7

The ALJ's discussion of plaintiff's spinal conditions is also inaccurate. She correctly noted that plaintiff's scoliosis caused a 12-degree right thoracic curve in 2017, which had progressed in March 2020. *Id.*, PageID.390, 400, 597. The ALJ also discussed that plaintiff's orthopedist, Ahmed Bazzi, D.O., stated in May 2020 that the spinal curve was unlikely to worsen because plaintiff's growth plates had closed. *Id.*, PageID.400, 597. The ALJ implied that plaintiff's spinal condition remained mild and stable through August 2022, when an x-ray showed a "similar exaggeration" of the spinal curvature compared to previous exams. *Id.*, PageID.536, 597. The ALJ then stated that plaintiff's spinal curve had worsened in October 2022 to 70 degrees. *Id.*, PageID.582, 598.

As plaintiff argues, the ALJ's summary omits relevant information and presents an inaccurate view of plaintiff's conditions. ECF No. 12, PageID.1489-1490. Dr. Bazzi explained in May 2020 that plaintiff had scoliosis, a sideways curve to the right that had progressed to 18 degrees, *and* kyphosis, a forward curve measuring 67 degrees. ECF No. 7-1, PageID.400. Plaintiff's left shoulder was elevated, she had a "left thoracic prominence" when bending forward, and she experienced pain with spinal flexion, hyperextension, and side-to-side bending. *Id.* The ALJ correctly

noted that Dr. Bazzi recommended conservative treatment including a back brace and physical therapy. *Id.*

In December 2020, Dr. Bazzi noted plaintiff's "significant kyphotic deformity" and complaints of back pain with activity and after wearing her brace. *Id.*, PageID.409. He stated that plaintiff's thoracic hump had progressed to 69 degrees and discussed the possibility of surgery if the curve reached 75 degrees or more. *Id.*, PageID.412. In June 2021, plaintiff's kyphotic curve had increased slightly, and Dr. Bazzi advised her to wean off the brace and focus on physical therapy because she had become dependent on the brace. *Id.*, PageID.417.

Dr. Mansour observed in March 2022 that plaintiff had a "visible hump on her left upper back especially noted when she bent over forward," and "stood with her body tilted to the right." *Id.*, PageID.503. During the exam, plaintiff reported that she has daily back pain that "feels like needles all over and sometimes feels like a knife is stabbing her back." *Id.*, PageID.502. By August 2022, Dr. Bazzi again noted that plaintiff's left shoulder was elevated and that her scoliosis had progressed to 21 degrees and her kyphosis had progressed to 80 degrees. *Id.*, PageID.528-529. Although Dr. Bazzi previously discussed surgery if the kyphotic curve

exceeded 75 degrees, he instead recommended physical therapy and continued monitoring. *Id.*

It is unclear from the ALJ's summary whether she recognized the nature and severity of plaintiff's spinal conditions, particularly her kyphosis. Clarification of this evidence may impact the ALJ's analysis under both the childhood disability standard (e.g., the "health and physical well-being" and "moving about and manipulating objects" domains) and the adult standard in evaluating the RFC. The case is thus remanded for further consideration.

### III. Conclusion

The Court **GRANTS** plaintiff's motion for summary judgment (ECF No. 12); **DENIES** the Commissioner's motion for summary judgment (ECF No. 14); and **REMANDS** the ALJ's decision under sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: January 29, 2026

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 29, 2026.

                                          s/Davon Allen
                                          DAVON ALLEN
                                          Case Manager